**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

IN RE:

| | | |
|---|---|---|
| JIMMY MARCELL MORRIS, | ) | CASE NO. 3:10-BK-04143 |
| | ) | CHAPTER 11 |
| DEBTOR. | ) | |

**MEMORANDUM OPINION RE: UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE WITH PREJUDICE**

The Court conducted a hearing on the United States Trustee's Motion to Dismiss Case with Prejudice on September 21, 2010, pursuant to Federal Rule of Bankruptcy Procedure 9014. The Court has reviewed the testimony from the hearing and the record as a whole. This memorandum opinion shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR. P. 7052.

### Findings of Fact

The debtor in this case, Jimmy Marcell Morris ("Morris"), filed his chapter 11 petition for bankruptcy relief on April 19, 2010. Morris's filing was what is often referred to as a "bare bones" or "skeletal" petition in that it did not include schedules A - J, a statement of financial affairs, Form 22B "Statement of Currently Monthly Disposable Income," a small business balance sheet, statement of operations and/or cash flow statement, or any of the documents required under 11 U.S.C. § 521(a)(1)(B)(iv) and (vi). Morris did include "Exhibit D-Individual Debtor's Statement of Compliance with Credit Counseling Requirement" on which he certified that he had requested credit counseling services, but had been unable to complete the counseling within seven days from the date of his request. Morris also indicated that he was entitled to a temporary waiver of the requirement based on the fact that:

> I had done my credit counseling and it went to an attorney that I had FIRED from my case from his inconsistentness [sic] and ineffectiveness of service, for failing to file pertinent documents within my case that cause [sic] said case to be dismissed by his inactiveness. I have never been able to retrieve said documents from him and said case had went forward before because he said it was done.

Contemporaneously with the petition, Morris filed an application to pay the chapter 11 filing fee in installments on which he indicated he would pay $100 on April 30, 2010, $313.00 on May 30, 2010, $313.00 on June 30, 2010, and $313.00 on August 30, 2010. As a pro se debtor, Morris prepared this application and signed it. The court granted Morris's application on April 20, 2010, and gave Morris 120 days from the petition filing date to pay the $1039.00 filing fee.

On page two of his petition, Morris indicated that he had one prior bankruptcy case: case number 09-13060. In fact, the case at bar is Morris's fourth bankruptcy filing in the last 8 years.[1] Morris filed a chapter 13 petition on July 15, 2004, case number 04-08625. Morris's chapter 13 plan was confirmed on September 2, 2004. On February 27, 2009, the case was dismissed for failure to pay.[2] At the time of filing case number 04-08625, Morris was represented by attorney James Alan Flexner. Flexner continued in his representation until May 7, 2009, at which time the court granted his motion to withdraw as counsel.

Morris filed his second chapter 13 case on May 13, 2009, case number 09-05445. Morris filed this case pro se. On Exhibit D to the petition, Morris indicated that he had received the 11 U.S.C. § 109(h) credit counseling, but did not have copy of the certificate. He did not, however, indicate he was entitled to a temporary waiver based on his attorney's failure to give him a copy of the credit counseling certificate. This case was dismissed on August 7, 2009, for failure to appear at the confirmation hearing.

On November 10, 2009, Morris filed a complaint in U.S. District Court for the Middle District of Tennessee against Equifirst Corporation, GMAC Mortgage, Mortgage Electronic Registration System, Inc., McCurdy and Chandler L.L.C. and two attorneys who allegedly work for McCurdy & Chandler, in which he alleged that the sales and assignments of his mortgage, note and deed of trust on his principle residence at 210 Sam Davis Drive, Smyrna, Tennessee, ("Smyrna

---

[1] Morris also filed a chapter 7 case on February 19, 1999, case number 99-01491; however, that case is outside the 8-year look back period. Morris received a discharge in his chapter 7 case on August 10, 1999, and the case was closed on September 3, 1999.

[2] Morris filed a pro se notice of appeal for the dismissal order on March 10, 2009; however, the appeal was subsequently dismissed for failure to file an In Forma Pauperis application.

2

property") were legally flawed and that GMAC, as assignee of the mortgage, had no right to foreclose on his property. On March 9, 2010, the U.S. District Court ordered, among other things, that Morris was required to file a written notice with the Chapter 13 Trustee indicating his intent to pursue the case so that the Chapter 13 Trustee could take whatever action he felt was appropriate.

After filing the complaint, but prior to the March 9, 2010 U.S. District Court order, Morris filed a third chapter 13 petition, case number 09-13060. Morris filed this case on November 12, 2009. This was the only case Morris listed on the petition in the case at bar. As with case number 09-05445, Morris indicated that he had received the § 109(h) credit counseling, but did not have a certificate. Again, he did not allege he was entitled to a temporary waiver of this requirement.

On December 14, 2009, and February 4, 2010, The Bank of New York Mellon Trust Company ("Bank") filed motions for an order confirming there was no automatic stay in effect when Morris filed case number 09-13060 pursuant to 11 U.S.C. § 362(c)(4)(A)(ii). The court granted that motion on March 24, 2010, and held that the automatic stay did not go into effect as to the movant, Morris or the Smyrna property when Morris filed case number 09-13060 on November 12, 2009. According to the Bank's motion for a comfort order, the Bank foreclosed on the Smyrna property on November 12, 2009.

The Court dismissed case number 09-13060 on April 2, 2010, for failure to make the first payment within 30 days, failure to file the § 109(h) certificate of credit counseling, failure to assert proper and allowable exemptions and failure to propose a plan which complied with 11 U.S.C. § 1325(a)(4). Morris filed the chapter 11 petition in this case on April 19, 2010.

On May 7, 2010, the United States Trustee ("U.S. Trustee") filed a motion to dismiss Morris's current case with prejudice based on Morris's prior filings and his failure to comply with the requirements of 11 U.S.C. §§ 109 and 521. The U.S. Trustee also alleged that Morris is a serial filer who has evidenced a pattern of abuse which constitutes bad faith and is tantamount to an abuse of process. In support of its motion, the U.S. Trustee alleged that Morris's case should be dismissed "for cause" pursuant to 11 U.S.C. § 1112(b)(4)(A) and (F).

Although Morris filed his schedules, statement of financial affairs and Form 22B on May 13, 2010, he has not yet filed a chapter 11 plan or a certificate of credit counseling. Morris has also not

3

yet attended the initial debtor's conference with the U.S. Trustee. He also failed to appear at the initial setting for his § 341 meeting of creditors on May 28, 2010. That failure prompted the court to enter an order dismissing the case on June 24, 2010, in compliance with LBR 2003-1. Morris filed an objection to that dismissal on July 15, 2010, and the court set the dismissal aside on August 26, 2010. Morris subsequently attended his § 341 meeting of creditors on September 20, 2010. At that meeting, Morris testified that his current bank balance is between "$0 and $1.00." When questioned by the representative from the U.S. Trustee's office at the hearing in this matter as to why his bank balance was so low, Morris testified that he had to use all of his monthly income to support his family. Morris has not paid any quarterly fees to the U.S. Trustee's office since this case was filed.

According to his schedules I and J, Morris's monthly income is $2,211.07 and his monthly expenses are $1,986.57. Morris owns one parcel of real property: the Smyrna property. Morris values this property at $170,000, claims an exemption of $169,999.00 pursuant to T.C.A. § 26-2-301, and alleges that there is no secured claim on the property. Despite this assertion, however, Morris lists a $1221.57 mortgage payment on schedule J. When questioned by the U.S. Trustee at the hearing in this matter, Morris testified that he has not made a mortgage payment in over a year. He only listed the payment on his schedules in the event the court finds the mortgage to be a legitimate claim.

Morris listed one secured creditor on his schedules: Preferred Automobile Credit with a claim of $9999.49 on a 2003 Ford Explorer. He listed two unsecured priority creditors: IRS ACS Support for $2500 and U.S. Department of Education for $4870.59. Morris listed a total of $5150.16 in unsecured non-priority debt. According to his schedules, Morris has assets of $186,595.00 and total liabilities of $21,616.08. He claims $176,096.96 in exemptions in the following property:

> $169,999.00 in his property at 210 Sam Davis Drive pursuant to T.C.A. § 26-2-301
> $4,999.00 in household furniture and appliances pursuant to T.C.A. § 26-2-103
> $9.00 in his checking/savings account pursuant to T.C.A. § 26-2-103
> $999.99 in family apparel pursuant to T.C.A. § 26-2-104
> $199.98 in jewelry pursuant to T.C.A. § 26-2-103

4

$-1,110.00 in automobile pursuant to T.C.A. § 26-2-103
$999.99 in his dog pursuant to T.C.A. § 26-2-103

Despite listing the secured creditor for his 2003 Ford Explorer, Morris did not list a monthly payment on the claim on schedule J. At the hearing in this matter, Morris testified that he has not made a payment on the car note in 2010.

According to his statement of financial affairs, Morris's business is "transmitting utilities." Morris lists "Jimmy Marcell Morris" as the name of his business and asserts he has been engaged in this business since "03/65-pres." On page 1 of his statement, Morris lists "$1776.07 and $435" as his income from "Primary Job and Live in Mate." On Schedule I, Morris states that he earns $1776.07 (after deductions for taxes and insurance) a month from his employment as an independent support coordinator of mental health at Community Development Center in Shelbyville, Tennessee. On line 13 of schedule B, "Stock and interests in incorporated and unincorporated businesses," Morris lists "Debtor/Transmitting utilities" with a current value of $0. As such, there does not appear to be any monthly income generated by Morris's utility transmission business. Morris has not filed his monthly operating reports in this case nor has he filed a disclosure statement or a chapter 11 plan.

At the hearing on the U.S. Trustee's motion to dismiss with prejudice, Morris stated that he is not trying to abuse the bankruptcy process. He testified that he has provided the missing § 521(a) documents to the chapter 13 trustee in his prior cases. He also testified that he attended the § 109(h) credit counseling in his prior case but that his attorney, James Flexner, would not give him a copy of the attendance certificate.

Despite having filed an application to pay the filing fee in installments, which included a proposed payment schedule, Morris has not made any payments towards his chapter 11 filing fee thusfar. The Bankruptcy Court Clerk's office issued a "Notice of Bill of Costs for Court Fees" on September 8, 2010. The notice gave Morris until September 22, 2010, to pay the filing fee in full. Morris has not yet paid that fee. At the hearing on the U.S. Trustee's motion to dismiss, Morris testified that he thought he had filed an application to proceed *in forma pauperis* as opposed to a motion to pay filing fee in installments.

5

## Conclusions of Law

Section 1112 of the Bankruptcy Code provides that

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a non-exhaustive list of examples of "cause" justifying case dismissal or conversion under § 1112(b)(1):

> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> . . . .
>
> (K) failure to pay any fees or charges required under chapter 123 of title 28;

11 U.S.C. § 1112(b)(4)(F) and (K). The party seeking dismissal or conversion bears the burden of proof and must demonstrate cause exists by a preponderance of the evidence. *In re Wahlie*, 417 B.R. 8, 11 (Bankr. N.D. Ohio 2009). "Once 'cause' is found to exist, dismissal or conversion is *mandatory* unless" one of the exceptions listed in § 1112(b)(1) or (2) applies. *In re Westgate Props., Ltd.*, 432 B.R. 720, 722 (Bankr. N.D. Ohio 2010) (emphasis added).

Section 1112(b)(1) provides that a court must decline to dismiss or convert a case if it finds that there are "unusual circumstances" which demonstrate that conversion or dismissal is not in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(1). Section 1112(b)(2) provides that a court must deny the motion to dismiss or convert if the debtor or a party in interest can demonstrate that:

> (A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time; and

6

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--

    (i) for which there exists a reasonable justification for the act or omission; and

    (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2)(A) and (B). Section 1112(b)(2) is written in the conjunctive which means that the debtor must be able to prove all three prongs in order for the exception to apply: (1) that there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) there is a "reasonable justification" for why he acted or failed to act, and (3) that the default under § 1112(b)(2)(B)(i) will be cured within a reasonable time.

## A.     11 U.S.C. § 1112(b)(4)(F)

Section 1112(b)(4)(F) states that "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" may serve as "cause" for dismissal or conversion of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(F). When filing a bankruptcy case, 11 U.S.C. § 521 requires an individual debtor to file various documents including a certificate which states that the debtor received credit counseling in accordance with 11 U.S.C. § 109(h)(1). A debtor must file the documents required by § 521 with the petition or within 14 days thereafter. Fed. R. Bankr. P. 1007(c). Failure to comply with the filing requirements of § 521 is grounds for dismissal of a chapter 11 case pursuant to § 1112(b)(4)(F). *In re Borges*, 2010 WL 3522235, *7 (Bankr. D.N.M. 2010).

    Section 109(h) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and mandates that, subject to certain exceptions:

> [A]n individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency . . . an individual or group briefing . . . that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

7

Case 3:10-bk-04143    Doc 62    Filed 10/06/10    Entered 10/06/10 16:27:40    Desc Main
Document     Page 7 of 15

11 U.S.C. § 109(h)(1). There are three exceptions to § 109(h)'s requirements of pre-petition credit counseling. First, it does not apply in districts "for which the United States Trustee . . . determines that the approved nonprofit budget and credit counseling agencies for such district are not reasonably able to provide adequate services . . . ." 11 U.S.C. § 109(h)(2)(A). The Middle District of Tennessee is not such a district. Second, a court may exempt a debtor from the § 109(h) credit counseling requirement if the debtor is incapacitated by reason of mental illness or deficiency, physically disabled or on active military duty in a military combat zone. 11 U.S.C. § 109(h)(4). Morris has not alleged he is entitled to an exemption under this subsection.

The third exception to § 109(h)'s pre-petition credit counseling requirement is that a debtor may obtain a temporary waiver of the requirement if he files a certification describing exigent circumstances and stating that he requested the credit counseling services but was unable to obtain the services within 7 days from the date of his request. 11 U.S.C. § 109(h)(3). This exception provides for a temporary deferral only and may not extend beyond 45 days from the filing of the petition. *Clippard v. Bass*, 365 B.R. 131, 136 (W.D. Tenn. 2007).

In the case at bar, Morris indicated he was unable to file a certificate of credit counseling with his petition because, although he had completed his credit counseling in one of his prior cases, his attorney had the certification and refused to turn it over to Morris. The only case in which Morris was represented by an attorney was the chapter 13 case filed on July 15, 2004, case number 04-08625. Section 109(h) did not become effective until October 17, 2005. Prior to that time, debtors were not required to obtain pre-petition credit counseling. Consequently, at the time Morris filed his chapter 13 case in 2004, there was no credit counseling requirement and he would not have participated in such a course. As such, there would not have been any attendance certificate for Flexner to withhold from Morris. The Court concludes that Morris's claims regarding his former attorney's failure to remit the certificate to him are without merit.

Section 109(h) requires a debtor to obtain a credit counseling briefing "*during the 180 days preceding the date of filing of the petition.*" 11 U.S.C. § 109(h) (emphasis added). Morris's petition in this case was filed April 19, 2010. To satisfy § 109(h)'s requirements in the case at bar, the

8

earliest date Morris could have received a credit briefing would have been October 21, 2009. Morris filed case number 09-13060 on November 12, 2009. Theoretically, had he obtained credit counseling sometime between October 21, 2009, and November 12, 2009, the briefing in case number 09-13060 may have satisfied the § 109(h) requirement in the case at bar; however, Morris has not alleged that he obtained the credit counseling in his most recent prior case. Instead, he alleged that he obtained the briefing in the case in which he was represented by an attorney--which was his 2004 case. Even had a credit counseling pre-requisite existed in 2004, any credit counseling obtained prior to that case would clearly be outside § 109(h)'s 180 day pre-petition period.

Federal Rule of Bankruptcy Procedure 1007 requires the debtor to file a certificate of credit counseling with the petition. Fed. R. Bankr. P. 1007(c). If, however, the debtor files "a statement that the debtor has received the credit counseling briefing required by § 109(h)(1) but does not have the certificate," he must file the certificate of credit counseling within 14 days after the petition is filed. Fed. R. Bankr. P. 1007(b)(3)(B) and 1007(c). In the case at bar, Morris technically asserted that he was entitled to a temporary exemption from the § 109(h) credit counseling requirement under § 109(h)(3)(A): "I certify that I requested credit counseling services . . . but was unable to obtain the services during the seven days from the time I made my request . . . ." Pursuant to Bankruptcy Rule 1007(b)(c), Morris had until May 3, 2010, to file a certificate of credit counseling.

At the hearing in this matter, Morris testified that he has not attended the § 109(h) credit counseling since his case was filed. Instead, he reiterated his claim that he had obtained the credit counseling in a prior case but that his attorney was refusing to turn a copy of the certificate over to him. As the Court has already discussed, Morris's claims with regard to obtaining credit counseling in his 2004 case are without merit. There was no credit counseling requirement at the time that case was filed so there can be no attendance certificate to withhold. The Court finds that Morris has neither timely satisfied § 109(h)'s requirement nor has he proven an entitlement to an exemption therefrom.

Section 109(h)'s pre-petition credit counseling requirement is an "eligibility pre-requisite" to filing for bankruptcy relief. *Bass*, 365 B.R. at 135. Although a court may waive strict compliance with § 109(h) to "prevent a manifest injustice," compliance with the statute is mandatory in cases

9

such as the one at bar. *Simon v. Amir* (*In re Amir*), 2010 WL 3057573, *14 (B.A.P. 6th Cir. 2010). This is Morris's third bankruptcy filing since § 109(h) was enacted. Morris's most recent chapter 13 case, case number 09-13060, was dismissed in part for failure to file the § 109(h) credit counseling requirement. He was clearly aware of the necessity for attending the course and for filing the certificate of attendance. Morris has not proven, or alleged, that he is entitled to a permanent waiver of the § 109(h) requirement. Therefore, the Court finds that Morris is ineligible to be a debtor pursuant to 11 U.S.C. § 109(h).

**C.     11 U.S.C. § 1112(b)(4)(K)**

Chapter 23 of Title 28 requires a chapter 11 debtor to pay the case filing fee and the quarterly U.S. Trustee fees. 28 U.S.C. § 1930(a)(3) and (6). Failure to pay either of these fees constitutes cause for dismissal under § 1112(b)(4)(K). *In re Sydnor*, 431 B.R. 584, 592 (Bankr. D. Md. 2010). Although a chapter 11 debtor is permitted to pay the case filing fee in installments pursuant to 28 U.S.C. § 1930(a), only chapter 7 debtors may seek leave to proceed *in forma pauperis*. 28 U.S.C. § 1930(f)(1).

The filing fee for a chapter 11 case is currently $1,000.00 plus a $39.00 noticing fee. 28 U.S.C. § 1930(a)(3). A court's ability to permit the payment of the case filing fee in installments is "subject to strict limitations." *In re Perez*, 363 B.R. 311, 312 (Bankr. S.D. Fla. 2007). "The number of installments shall not exceed four, and the final installment shall be payable not later than 120 days after filing the petition." Fed. R. Bankr. P. 1006(b)(2). A court may extend the 120 day period to 180 days, but only "for cause." Id. The 180 day period is the "maximum amount of time for paying the bankruptcy filing fee in installments" and a court "cannot permit [a] case to remain pending if the fee is not paid within 180 days from the petition date." *In re Gulley*, 400 B.R. 529, 535 (Bankr. N.D. Tex. 2009); *In re Brown*, 2008 WL 2705197, at *1 (Bankr. D. Colo. 2008). A debtor seeking to enlarge the Rule 1006(b)(2) time period beyond the initial 120 day period must request said extension from the court and must demonstrate cause. *In re Harris*, 2008 WL 458730, at *3 (Bankr. D. Colo. 2008).

10

In the case at bar, Morris filed his application to pay the filing fee in installments on April 19, 2010. Pursuant to that document, Morris proposed to pay $100 on April 30, 2010, $313.00 on May 30, 2010, $313.00 on June 30, 2010, and $313.00 on August 30, 2010. The Rule 1006(b)(2) 120 day time period expired on August 17, 2010. Morris has not requested an extension of this time period nor has he demonstrated cause for such an extension. In addition, Morris has not paid any U.S. Trustee quarterly fees since commencement of his case. The Court holds that the U.S. Trustee has carried his burden of proof as to § 1112(b)(4)(K).

The Court cannot find any unusual circumstances in the case at bar which demonstrate that conversion or dismissal pursuant to § 1112(b)(4)(K) is not in the best interests of the estate under 11 U.S.C. § 1112(b)(1). In addition, the Court finds that Morris has not demonstrated that there is *any* justification, reasonable or not, for his failure to pay either the filing fee or the quarterly fees pursuant to 11 U.S.C. § 1112(b)(2). Morris has not made any payments towards his filing fee or his quarterly fees since the case was commenced. At the hearing in this matter, Morris's only response to questions regarding his failure to pay the fees in this case was that he thought his application to pay the chapter 11 filing fee in installments was actually an application to proceed *in forma pauperis*. The Court finds Morris's IFP argument entirely without merit. The installment application states at the top, in bold lettering no less, "Application to Pay Filing Fee in Installments." Line 1 states "In accordance with Fed. R. Bankr. P. 1006, I apply for permission to pay the filing fee amounting to $1,039.00 in installments." Line 4 of the application states "I propose the following terms for the payment of the Filing Fee" and then proposes four payments: $100 on April 30, 2010, and three payments of $313.00 on May 30, 2010, June 30, 2010 and August 30, 2010, respectively. As a pro se debtor, Morris is presumed to have prepared, signed and filed this application himself. It is quite simply asinine for Morris to try and convince this Court that he thought his application to pay the filing fee in installments was an *in forma pauperis* application.

As a result of these findings, the Court concludes that Morris's failure to pay the filing fee and the U.S. Trustee quarterly fees is grounds for dismissal of his case under § 1112(b)(4)(K). The

11

Court also concludes that there are no exceptions which prohibit it from either converting or dismissing Morris's case pursuant to subsection (k).

**D.      Dismissal with prejudice**

In moving to dismiss the case, the United States Trustee has requested that dismissal be with prejudice for a period of two years. Ordinarily, section 109(g) of the Bankruptcy Code limits any dismissal with prejudice of a bankruptcy case to 180 days:

> no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if–
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
>> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g). However, "[w]here there is sufficient cause, bankruptcy courts have the authority pursuant to 11 U.S.C. §§ 105(a) and 349(a) to prohibit bankruptcy filings in excess of 180 days." *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 737 (B.A.P. 6th Cir. 2010) (citing *Dietrch v. Nob-Hill Stadium Props.*, 2007 WL 579547, *5 (6th Cir. 2007) (unpublished)); *Casse v. Key Bank Nat'l Ass'n* (*In re Casse*), 198 F.3d 327, 339-40 (2nd Cir. 1999); *Leavitt v. Soto* (*In re Leavitt*), 171 F.3d 1219, 1223 (9th Cir. 1999); *Colonial Auto Center v. Tomlin* (*In re Tomlin*), 105 F.3d 933 (4th Cir. 1997). Section 349(a) of the Bankruptcy Code provides that

> *[u]nless the court, for cause, orders otherwise*, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a) (emphasis added). Section 105(a) grants a bankruptcy court broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code and to prevent an "abuse of process." 11 U.S.C. § 105(a).

12

One of the causes justifying dismissal of a case with prejudice for longer than 180 days is a case filed in bad faith by a serial filer. *Casse*, 198 F.3d at 339; *In re Joobeen*, 385 B.R. 599, 609-10 (E.D. Pa. 2008); *Cusano*, 431 B.R. at 737; *Marshall v. McCarty* (*In re Marshall*), 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009). In the context of a chapter 11 case, the Sixth Circuit has recognized that a good faith inquiry is highly fact specific and must be made on a case-by case basis. *In re Trident Assocs. Ltd. P'ship.*, 52 F.3d 127, 131 (6th Cir. 1995). Serial filings by a debtor who has made "little effort, if any, to comply with their various plans of reorganization by making the required payments thereunder" can be one indicia of bad faith. *In re Stathatos*, 163 B.R. 83, 88 (N.D. Tex. 1993); *In re Grischkan*, 320 B.R. 654, 661 (Bankr. N.D. Ohio 2005). The decision to dismiss a case with prejudice for longer than 180 days is within the court's discretion. *Casse*, 198 F.3d at 339.

In the case at bar, the Court concludes that Morris is a bad faith serial filer. Since July of 2004, Morris has been under the protection of the Bankruptcy Code for all but a little over six months. Morris filed his first chapter 13 case on July 14, 2004. That case was subsequently dismissed on February 27, 2009, for failure to pay. Less than three months later, on May 13, 2009, Morris filed his second chapter 13 case which was dismissed on August 7, 2009, for failure to appear at the confirmation hearing. A little over three months after that dismissal, Morris filed his third chapter 13 case on November 12, 2009. That case was dismissed on April 2, 2010, for failure to pay, failure to obtain credit counseling, failure to assert consistent exemptions and failure to comply with 11 U.S.C. § 1325(a)(4). Seventeen days later, Morris filed the instant case. Since February 2009, Morris has not made any meaningful payments to his creditors. He testified at the hearing that he has not made a mortgage payment in over a year and that he has not made a payment on his car note in 2010.

Although the Court understands that Morris disputes the validity of the lien on the Smyrna property, he has not taken any steps to pursue that litigation since the March 9, 2010, U.S. District Court order. Allegedly, he filed a notice of intent to pursue the litigation with the chapter 13 trustee in his prior case, but that case was dismissed less than a month after issuance of the U.S. District Court order. Once that dismissal was entered, the Chapter 13 Trustee had no standing to pursue the litigation.

13

Despite his dispute with the validity of the mortgage, Morris included the monthly payment on the Smyrna property on his schedule J in this. When questioned about this at the hearing, Morris testified that he included the payment in case the Court determines it is a legitimate claim. Morris has not, however, taken any steps in this case to have the Court rule on the validity of the mortgage on the Smyrna property. Such action would have to be commenced by filing an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2).

In addition, Morris has been less than cooperative in this case with complying with his statutory duties as a debtor. He just recently attended his § 341 meeting of creditors and he has yet to attend the initial debtor's conference with the U.S. Trustee. Morris has not paid any portion of the case filing fee. As the Court discussed supra, his claim that he thought he had filed an application to proceed *in forma pauperis* is wholly without merit. Morris has not paid any quarterly fees to the U.S. Trustee's office nor has he filed any of his monthly operating reports. He also yet to file a certificate of credit counseling as mandated by 11 U.S.C. § 521. Also, for the reasons discussed supra, Morris's assertion on the petition that he has attended the course but his attorney has failed to remit a copy of the certificate to him cannot be accurate since there was no credit counseling pre-requisite prior to his 2004 case. Lastly, Morris has asserted exemptions which are not allowed by law–namely his claimed $169,999.99 exemption in his house. At best, Tennessee law would allow him an exemption of $25,000 in the house. Also, the claimed exemption in his dog as personal property and his claimed negative exemption in his car are puzzling.

Finally, Morris listed the $1221.57 monthly payment as a portion of his $1,986.57 monthly expenses on schedule J despite the fact that he has not made that payment in over a year. If he is not making the mortgage payment, Morris's monthly expenses should only be $765.00, which would leave him with disposable income of $1,446.07. His testimony at the hearing, however, was that his current bank balance is between $0 and $1.00. If Morris is barely able to satisfy his monthly expenses of $765 with his income of $2,211.07, the Court cannot see how he would be able to make his car note payment or his mortgage payment--in the event that the Court were to determine it is a legitimate debt. Morris's schedules indicate that his only income is from his job at the Community

14

Development Center. Although he indicated on his statement of financial affairs that he is involved in the utility transmission business, this does not appear to generate any type of income for Morris.

Although the Court has only been involved in Morris's case for a short time, his behavior at various hearings has only reinforced the Court's conclusion that Morris is acting in bad faith. The Court has taken large amounts of time to try and explain the statutory requirements to Morris only to have him appear at the next hearing and feign ignorance. His has accused various judges and clerk's office staff of attempting to thwart his efforts to obtain bankruptcy relief when the only thing they have done is required him to comply with the Bankruptcy Code.

After considering the record as a whole, the Court finds that Morris is abusing the bankruptcy process with his serial filings. As a result, the Court will grant the U.S. Trustee's motion to dismiss with prejudice and will prohibit Morris from filing a bankruptcy case under any chapter of the Bankruptcy Code for a period of two years from entry of the order.

_____
G. HARVEY BOSWELL
U.S. BANKRUPTCY JUDGE

15